# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DARYL ALAN HESS,                    )
                                    )
                Petitioner,        )
                                    )
v.                                  )          **Case No. 10-CV-0462-CVE-FHM**
                                    )
ANITA TRAMMELL, Warden,[1]          )
                                    )
                Respondent.        )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Daryl

Alan Hess, a state inmate appearing pro se. Respondent filed a response (Dkt. # 8) and provided the

state court records (Dkt. ## 8, 9, and 10) necessary for adjudication of Petitioner's claims. Petitioner

filed a reply to Respondent's response (Dkt. # 16). For the reasons discussed below, the Court finds

the petition for writ of habeas corpus shall be denied.

### BACKGROUND

Just after midnight, on May 5, 2007, Shelby Cowan was robbed by two men at gunpoint

outside the Tin Dog Saloon, located in Tulsa, Oklahoma. Between 6:30 and 7:00 a.m., on May 7,

2007, Dr. Ronald Saizow was robbed by two men at gunpoint at his home, located in Tulsa,

Oklahoma. In the Cowan case, one robber used a handgun to effect the robbery. In the Saizow case,

one robber wielded a shotgun while the other robber was armed with a handgun. In both cases, the

---

[1]Under Rule 2(a), Rules Governing Section 2254 Cases, the proper party respondent is the
state officer having custody of the petitioner. Petitioner is currently in custody at the Oklahoma
State Penitentiary (OSP). Therefore, the state officer having custody of Petitioner is Anita
Trammell, Warden at OSP. The Clerk of Court shall be directed to substitute Anita Trammell,
Warden, in place of David C. Miller, Warden, as party respondent.

robbers were in a maroon or red pick up truck.  Between 9:00 and 10:00 a.m., on May 7, 2007, Petitioner and Mitchell Sullivan arrived at the apartment of Jessica Solomon[2] in a maroon Dodge Ram pickup truck. Police officers were present with an arrest warrant.  Evidence from the Saizow robbery was recovered from Solomon's apartment.  In addition, Sullivan had possession of a wallet containing cards belonging to Cowan. Firearms, including two (2) shotguns and a handgun, were found in a vehicle used by Solomon. She had given the keys to that vehicle, a tan Infinity SUV, to Petitioner at about 12:30 a.m. on May 7, 2007.  After being advised of his rights under Miranda,[3] Petitioner waived his rights and admitted his involvement in the robberies of Cowan and Saizow.

Based on those events, Petitioner was charged by Fifth Amended Information in Tulsa County District Court, Case No. CF-2007-2643, with Robbery With a Firearm (Cowan robbery) (Count I), Robbery With a Firearm (Saizow robbery) (Count II), Second Degree Burglary (Counts III and IV), and Possession of a Firearm After Former Conviction of a Felony (Count VI).[4]  At the conclusion of a competency trial, held August 21, 2007, a jury found Petitioner to be competent. On September 22-25, 2008, Petitioner was tried by a jury. After the State rested, the trial judge sustained defense counsel's demurrer to Counts III and IV. Petitioner testified in his own defense. He admitted he had prior felony convictions, but denied involvement in the Cowan and Saizow robberies. The jury found Petitioner not guilty as to Count I, but guilty as to Counts II and VI.  On October 2, 2008,

---

[2]Solomon had been dating Petitioner since February 2007.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

[4]Petitioner's co-defendant, Mitchell Sullivan, was charged with Robbery With a Firearm (Cowan robbery) (Count I), Robbery With a Firearm (Saizow robbery) (Count II), Possession of a Firearm After Former conviction of a Felony (Count V), and Robbery With Firearm (Count VII). On February 29, 2008, Sullivan entered guilty pleas to Counts I, II, and V.  He was sentenced on that date to twenty (20) years imprisonment on each count, to be served concurrently. Count VII was dismissed.

the trial judge sentenced Petitioner in accordance with the jury's recommendation to twenty (20) years imprisonment on Count II, and three (3) years imprisonment on Count VI, to be served consecutively.  At trial, Petitioner was represented by attorney Brian Martin.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney S. Gail Gunning, Petitioner raised the following propositions of error:

> Proposition 1:  The evidence was insufficient to support Appellant's conviction on Count VI -- Possession of a Firearm After Former Conviction of a Felony.

> Proposition 2: Conviction on Count II -- Robbery With a Firearm, and Count VI -- Possession of a Firearm After Former Conviction of a Felony, subjects Appellant to double punishment.

> Proposition 3: Appellant was prejudiced by the prosecutor's improper closing argument.

> Proposition 4: Appellant was prejudiced by the failure of trial counsel to object to the prosecutor's improper and prejudicial closing argument.

(Dkt. # 8, Ex. 1). On September 16, 2009, in Case No. F-2008-975, the OCCA entered its unpublished summary opinion affirming the Judgment and Sentence of the district court.  See Dkt. # 8, Ex. 3.

On March 22, 2010, Petitioner filed an application for post-conviction relief in the state district court. See Dkt. # 8, Ex. 6. Petitioner raised seventeen propositions of error. See Dkt. # 8, Ex 4.  By order filed April 28, 2010, the state district judge carefully recited all seventeen propositions of error and denied the request for post-conviction relief. Id. Petitioner appealed. In an order filed June 10, 2010, in Case No. PC-2010-445 (Dkt. # 8, Ex. 6), the OCCA affirmed the denial of post-conviction relief.

Petitioner commenced the instant habeas corpus action by filing his petition on July 20, 2010.  See Dkt. # 1.  He identifies the following twenty-one (21) grounds of error:

3

Ground 1:       The evidence was is [sic] insufficient to support Petitioner's conviction on Ct. VI -- Possession of Firearm A.F.C.F., U.S. Const. Amends. V, XIV; Okla. Const. Art. II, § 7.

Ground 2:       Conviction on Ct. II -- Robbery With a Firearm and Ct. VI -- Possession of a Firearm A.F.C.F., subjects Petitioner to double punishment, violation U.S. Const. Amend. V, XIV, Okla. Const. Art. II, § 21.

Ground 3:       Petitioner was prejudiced by the prosecutor's improper closing argument, violation of U.S. Const. Amends. V, XIV; Okla. Const. Art. II, §§ 7, 19.

Ground 4:       Petitioner was prejudiced by the failure of trial counsel to object to the prosecutor's improper and prejudicial closing argument, violation of 6th Amend., Okla. Const. Art. II, § 7, 20.

Ground 5:       U.S. Const. Amend. 14; U.S. Const. Amend. 6. Tulsa District Judge Allen Klein issued a search warrant to obtain Petitioner's handwriting, Petitioner having been already charged and represented by counsel, Petitioner nor counsel notified prior to execution of said warrant, defense not given opportunity to be heard, Petitioner refused to comply, and said refusal testified to by police detective in front of jury, in violation of 14th U.S. Const. Amend. due process and right to a fair trial.

Ground 6:       U.S. Const. Amend. 14; U.S. Const. Amend. 6. Petitioner was prejudiced by the jury hearing testimony by Detective St. Clair that Petitioner refused to comply with illegal search warrant for handwriting exemplars (see ground five), defense counsel was ineffective for failing to file motion to supress [sic] this testimony, trial court erred by failing to hear Petitioner's pro se motion to supress [sic] this testimony.

Ground 7:       U.S. Const. Amend. 14; U.S. Const. Amend. 6. Petitioner was prejudiced and deprived of due process by the filing and granting of a "motion to compel production of handwriting sample" on Feb. 26th, 2008, Petitioner was not notified, nor given opportunity to be heard.

Ground 8:       U.S. Const. Amends. 14, 6. Defense counsel was ineffective for failing to object to the introduction of the handwriting sample, failed to file a reply brief and defend Petitioner against the motion to compel discussed in ground seven, counsel failed to investigate the issue and hold the prosecution to any adversarial standard.

Ground 9:       U.S. Const. Amends. 6, 14.  The prosecution filed "Additional Discovery" on Feb. 26th, 2008, introducing a letter writin [sic] by Petitioner, in violation of due process, letter should have been introduced by way of "Notice of

4

Intent to Introduce Evidence of Other Bad Acts/Crimes" and hearing held for court's decision of admissibility, defense counsel was ineffective for failing to contest it, demand a hearing and hold the prosecution to its burden of proving its relevence [sic].

Ground 10:   U.S. Const. Amends. 6, 14.  The court erred in granting the prosecution's "Notice of Intent to Introduce Evidence of Other Bad Acts/Crimes" conjoining the Cowan and Saizow robberies in the same trial, defense counsel was ineffective for failing to competently defend on this, counsel failed to research it and file a reply brief.

Ground 11:   U.S. Const. Amend. 14; U.S. Const. Amend. 6; U.S. Const. Amend. 8; Okla. Const. Art. II, §§ 7, 9, 20. Defense counsel was ineffective for failing to investigate, identify, and utilize evidence that was available prior to trial and would have lead to Petitioner's acquittal.

Ground 12:   U.S. Const. Amend. 14. Infringement upon presumption of innocence.

Ground 13:   U.S. Const. Amend. 14; Okla. Const. Art. II, § 20, U.S. Const. Amend. 6. Petitioner filed several pro se motions (Exhibit Y), the court refused to hear them, the court did accept a pro se motion from Petitioner for a Jackson v. Denno hearing, due process would require if one pro se motion was accepted, they all should be accepted, one motion was about conflict with counsel and one to withdraw counsel.

Ground 14:   U.S. Const. Amend. 14; U.S. Const. Amend. 6; Okla. Const. Art. II, § 20. Petitioner filed a pro se "Motion to Supress [sic]" requesting a Jackson v. Denno hearing (Exhibit Y pg. 1), to supress [sic] alleged confessions.

Ground 15:   U.S. Const. Amend. 14; U.S. Const. Amend. 6; Okla. Const. Art. II, § 20. The court erred in admitting alleged confessions and testimony by Sgt. Witt and Det. Forbrich on the alleged confessions, defense counsel failed to obtain and utilize evidence pertaining to Petitioner's mental state at the time of questioning and the circumstances of the questioning, counsel failed to show the jury the video tape interview conducted on the morning of arrest, counsel failed to ask Petitioner if he wished to testify.

Ground 16:   U.S. Const. Amend. 6, 14; Okla. Const. Art. II, § 20. The court erred in admitting pysical [sic] evidence, Ronald Saizow's credit cards and identification cards, Shelby Cowan's identity cards and video rental cards, photos of a cell phone Saizow identified as his, and a shotgun shell husk, found inside Jessica Solomon's apartment and on Mitchell Sullivan.

Ground 17:     U.S. Const. Amends. 6, 14; Okla. Const. Art. II, § 20. Petitioner filed a pro se "motion to supress [sic]" (Exhibit Y pg. 6-11), this motion was to supress [sic] items found in Solomon's apartment (ground sixteen) and guns found in "Solomon's" stolen vehicle.

Ground 18:     U.S. Const. Amends. 6, 14.  Defense counsel failed to object to the photo line-up identification, preliminary hearing identification, and trial identification of Petitioner by Ronald Saizow, and have them struck from the record.

Ground 19:     U.S. Const. Amends. 6, 14.  Defense counsel was ineffective for failing to request an eyewitness identification jury instruction in regard to Ronald Saizow, and trial court erred in not issuing it on its own.

Ground 20:     U.S. Const. Amends. 6, 14. Defense counsel failed to request a jury instruction in impeachment for Ronald Saizow.

Ground 21:     U.S. Const. Amends. V, VI, VIII, XIV; Okla. Const. Art. II, §§ 7, 9, 19, 20. The cumulative effect of all the errors addressed above deprived Petitioner of a fair trial.

(Dkt. # 1). Grounds 5-21 were first raised in Petitioner's post-conviction proceeding.  He explains his failure to raise each of those claims on direct appeal by alleging that appellate counsel was aware of the claims and failed to raise them. See Dkt. # 1. In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief on grounds 1, 3, and 4 under 28 U.S.C. § 2254(d); ground 2 concerns an issue of state law and is not cognizable in this habeas corpus action; and grounds 5-21 are procedurally barred and also meritless. See Dkt. # 8.

*ANALYSIS*

**A.  Exhaustion**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner raised his grounds 1-4 on direct appeal, and grounds 5-21 on post-conviction appeal. Therefore, he has exhausted state remedies as to those claims.

**B.  Evidentiary hearing**

The Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**C.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

7

In this case, the OCCA adjudicated Petitioner's grounds 1-4 on direct appeal. In addition, the OCCA adjudicated Petitioner's post-conviction claims of ineffective assistance of trial and appellate counsel on post-conviction appeal.[5] Insofar as Petitioner claims violations of the United States Constitution, those claims will be reviewed pursuant to § 2254(d). To the extent Petitioner also claims violations of the Oklahoma Constitution or other Oklahoma law, those claims are denied because they are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

_____

[5]Respondent argues that, with the exception of Petitioner's claims of ineffective assistance of appellate counsel, the OCCA imposed a procedural bar on Petitioner's post-conviction claims. See Dkt. # 8 at 16. However, a careful reading of the OCCA's order leads to the conclusion that the state appellate court denied Petitioner's claims of ineffective assistance of both trial and appellate counsel on the merits. See Dkt. # 8, Ex. 6. In addition, although the order does not specifically cite to a state procedural default for the denial of relief on the remainder of Petitioner's claims, this Court does not have good reason to question whether there is an independent and adequate state law ground for the OCCA's affirmance of the state district court's denial of post-conviction relief. See Coleman v. Thompson, 501 U.S. 722, 739-40. The OCCA affirmed the state district court's denial of post-conviction relief. See Dkt. # 8, Ex. 6. The state district court clearly applied a procedural bar based on independent and adequate state law grounds to deny relief on Petitioner's post-conviction claims, other than his claims of ineffective assistance of counsel. See Dkt. # 8, Ex. 4. Therefore, as discussed in Part D herein, Petitioner's claims first raised in his post-conviction proceeding, other than his claims of ineffective assistance of trial and appellate counsel, are procedurally barred from federal habeas corpus review.

### 1.  Claims adjudicated on direct appeal

### a.  Sufficiency of the evidence (ground 1)

As his first ground of error, Petitioner asserts that the State presented insufficient evidence to support his conviction on Count VI, Possession of Firearm, After Former Conviction of a Felony. See Dkt. # 1.  In adjudicating this claim on direct appeal, the OCCA ruled as follows:

> [A] rational jury could conclude, beyond a reasonable doubt, that Appellant was guilty of being a felon in possession of firearm, if only by the testimony of the robbery victim. The victim's description of the firearms used was fairly consistent with the attributes of firearms found in a vehicle belonging to Appellant's girlfriend. This supplied circumstantial support for the charge, but was not crucial to it. Furthermore, the jury could consider Appellant's admissions to police as additional evidence to support this offense. The evidence supports a conviction for Felon in Possession of a Firearm.

(Dkt. # 8, Ex. 3 at 2.)

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

Upon review of the evidence in the light most favorable to the prosecution, the Court finds sufficient evidence supported Petitioner's conviction on the charge of Possession of Firearm, After Former Conviction of a Felony. Under Oklahoma law, the State was required to prove that Petitioner (1) knowingly and willfully, (2) possessed or had under his immediate control, or in any vehicle he

9

is operating or is a passenger, or at a place where he resides, (3) any pistol, shotgun, or other firearm, (4) after former conviction of a felony.  See Okla. Stat. tit. 21, § 1283(A); OUJI-CR(2d) 6-39. Petitioner's jury heard Dr. Ronald Saizow, the victim of the robbery of which Petitioner was convicted, identify Petitioner as the man who pointed a gun at him and took his wallet.  See Dkt. # 10-3, Tr. Trans. Vol. III at 349.  When he was shown State's Exhibit 17, a handgun recovered from Solomon's vehicle, id. at 388, Dr. Saizow testified that the gun looked "familiar" and was "similar" to the gun the robber pointed at him, id. at 344-45. Petitioner testified in his own defense and admitted that he had prior felony convictions.  Id. at 459. After reviewing that evidence in the light most favorable to the prosecution, the Court finds that any rational trier of fact could have found the essential elements of Possession of a Firearm, After Former Conviction of a Felony, beyond a reasonable doubt.  Therefore, the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, Supreme Court law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts in light of the evidence presented at trial, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Petitioner is not entitled to habeas corpus relief on this claim.

### b.  Double punishment (ground 2)

As his second proposition of error, Petitioner claims that his convictions on both Count II, Robbery With a Firearm, and Count VI, Felon in Possession of a Firearm, violate the prohibitions on double punishment as provided under the United States and Oklahoma Constitutions. On direct appeal, Petitioner argued that his convictions on Counts II and VI had the result of punishing him twice for possessing a firearm in violation of Oklahoma law prohibiting double punishment.  He also

10

argued that his convictions were violative of the United States Constitution's provisions making it unlawful for anyone to be punished twice for the same offense.  The OCCA rejected this claim, discussing only Oklahoma law and finding as follows:

> . . . Appellant's separate convictions for both Robbery with Firearms, and Possession of a Firearm After Conviction of a Felony, do not constitute double punishment. It is apparent, from enactment of 21 O.S. § 1283, that the Legislature intended to punish a felon's mere possession of a firearm, independently from any other crime he might commit with it. The clear purpose of § 1283 is to deter felons from possessing firearms, in hopes of preventing their opportunistic use in future crimes. 21 O.S.2001, § 11; *Davis v. State*, 1999 OK CR 48, ¶ 13, 993 P.2d 124, 127; *Posey v. State*, 1991 OK CR 16, ¶ 4, 805 P.2d 687, 688.

(Dkt. # 8, Ex. 3 at 2-3).

To the extent Petitioner claims that he has suffered multiple punishments in violation of Oklahoma statutory law, Okla. Stat. tit. 21, § 11, the Court finds the claim should be denied because it is not cognizable on federal habeas corpus review.  As discussed above, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  <u>Estelle</u>, 502 U.S. at 67-68; <u>see</u> <u>also</u> 28 U.S.C. § 2254(a).  Petitioner's multiple punishment claim, insofar as it is based on violation of an Oklahoma statute, is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis.[6]

Nor is Petitioner entitled to relief on his claim that his convictions violate the prohibition of double punishment contained in the United States Constitution. The double jeopardy clause protects against multiple punishments for the same offense.  <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969), <u>overruled on other grounds by</u> <u>Alabama v. Smith</u>, 490 U.S. 794 (1989).  A single act may form the basis for the prosecution of two distinct statutory offenses whenever conviction for each

---

[6]For that same reason, any double punishment claim based on violation of the Oklahoma Constitution is denied because it is not cognizable in this habeas corpus action.

11

offense requires the proof of a fact that the other does not. <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932); <u>Anderson v. Mullin</u>, 327 F.3d 1148, 1153-54 (10th Cir. 2003); <u>Goldsmith v. Cheney</u>, 447 F.2d 624, 627-28 (10th Cir. 1971).

In this case, Petitioner's convictions do not constitute multiple punishments for the same offense in violation of the United States Constitution because each offense requires the proof of a fact that the other does not. The crime of Robbery With a Firearm requires proof of robbery and does not require proof that the robber has a prior felony conviction. In contrast, the crime of Felon in Possession of a Firearm requires proof that the person possessing a firearm has a prior felony conviction. Thus, Petitioner's convictions for those two crimes does not violate the United States Constitution. Petitioner has failed to demonstrate that the OCCA's adjudication of his double jeopardy claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). For that reason, he is not entitled to habeas corpus relief on this claim.

### c. Prosecutorial misconduct (ground 3)

As his third ground of error, Petitioner claims that the prosecutor engaged in an improper closing argument resulting in prejudice. <u>See</u> Dkt. # 1. On direct appeal, Petitioner complained that "the prosecutor's closing argument included extensive 'facts' not in evidence, personal opinions of the prosecutor, and other irrelevant material that severely prejudiced Mr. Hess." <u>See</u> Dkt. # 8, Ex. 1 at 22. The complained of comments were based on an exchange during the prosecutor's cross-examination of Petitioner. The prosecutor questioned Petitioner about one of his tattoos: "Mama tried." <u>See</u> Dkt. # 10-3, Tr. Trans. Vol. III at 474. Petitioner acknowledged that the tattoo was based on a Merle Haggard song and that he had "no problem admitting the things I've done." <u>Id.</u> at 474-75.

12

During his closing argument, the prosecutor recited at length the lyrics from the song and stated that Petitioner "identifies as his personality" those lyrics as reflected by his decision to have the words "Mama tried" tattooed on his neck. Id. at 507-08. The OCCA adjudicated this claim on direct appeal and ruled as follows:

> . . . the prosecutor's reference in closing argument to the lyrics of a popular song, whose title was tattooed on Appellant's neck, was not plain error. The prosecutor was merely commenting on Appellant's refusal to take responsibility for his actions. Nor did the prosecutor plainly err in suggesting that one would have to be "really, really stupid" to believe Appellant's testimony.

(Dkt. # 8, Ex. 3 at 3 (citations omitted)).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotation omitted). To make out a constitutional due process violation warranting reversal of a jury's verdict, the comments must so infect the entire proceedings as to "impede the jury's ability to judge the evidence fairly." Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 570 (10th Cir. 2000), overruled on other grounds by McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001) (en banc).

Petitioner is not entitled to habeas corpus relief as to the claims of prosecutorial misconduct adjudicated on direct appeal because he has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Upon review of the record in this case, the Court cannot find that the prosecutor's reference to the Merle Haggard song was so egregious in the context of the entire trial that it rendered the trial fundamentally unfair. Donnelly, 416 U.S. at 642-48; Cummings, 161 F.3d at 618. During cross-examination by the prosecutor, Petitioner admitted that his tattoo "Mama Tried" was based on the song by Merle Haggard.  See Dkt. # 10-3, Tr. Trans. Vol. III at 474-75. Although the evidence against Petitioner, including his identification as one of the robbers by the victims, the recovery of the victims' belongings at the apartment where Petitioner was arrested, the recovery of firearms similar to the ones used in the robberies from a vehicle belonging to Petitioner's girlfriend, his admission of his involvement in the robberies to Detective Forbrich, and his effort to create an alibi from the jail, was overwhelming, Petitioner denied involvement in the crimes with which he was charged. Id. at 453, 455, 467, 470, 480. Upon consideration of the strength of the evidence presented by the State, the challenged comments by the prosecutor were fair comments on the evidence and could not plausibly have tipped the scales in favor of the prosecution. Smallwood, 191 F.3d at 1275-76. Furthermore, Petitioner's jury acquitted him of the Cowan robbery and recommended minimum sentences for Counts II and VI. Thus, Petitioner has not demonstrated that the prosecutor's comments so infected the trial as to impede the jury's ability to judge the evidence fairly. Under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on his claim of prosecutorial misconduct.

14

### d.  Ineffective assistance of trial counsel (ground 4)

In his fourth proposition of error, Petitioner alleges that trial counsel provided ineffective assistance of counsel. Specifically, he complains that trial counsel failed to object to the prosecutor's improper and prejudicial closing argument.  The OCCA denied relief on this claim, citing Bland v. State, 4 P.3d 702, 731 (Okla. Crim. App. 2000), and finding that "[b]ecause we find no unfair prejudice in the prosecutor's closing argument, trial counsel was not ineffective for failing to object to it." See Dkt. # 8, Ex. 3 at 3.

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel. Even if trial counsel performed deficiently in failing to object to the prosecutor's closing argument, Petitioner has failed to show "'there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" Hickman v. Spears, 160 F.3d 1269, 1273 (quoting Strickland, 466 U.S. at 694). Therefore, Petitioner has not shown that the OCCA's adjudication of his claim of ineffective assistance of trial counsel based on counsel's failure to object to the prosecutor's closing argument was an unreasonable application of Strickland. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

### 2. Claims adjudicated on post-conviction appeal

The OCCA adjudicated Petitioner's claims of ineffective assistance of trial and appellate counsel as raised on post-conviction appeal. Specifically, the OCCA cited Strickland, and found that "Petitioner has not established trial or appellate counsel's performance was deficient or that the

result of his trial and appeal was not reliable and fair." Id. The Court shall assess whether Petitioner is entitled to habeas corpus on his claims of ineffective assistance of trial and appellate counsel, as raised in his post-conviction proceedings.

Petitioner's post-conviction claims fall into five broad categories: (1) claims based on issues related to a handwriting sample obtained from Petitioner and introduced at his trial (grounds 5-9); (2) challenges to rulings or lack of rulings by the trial judge (grounds 10, 12, 13, 14, 15, 16, and 17); (3) ineffective assistance of trial counsel (grounds 11, 18, 19, and 20); (4) cumulative error (ground 21); and (5) ineffective assistance of appellate counsel (raised with regard to all post-conviction claims). The Court notes that included within claims raised in categories (1) and (2) are additional claims of ineffective assistance of trial counsel. The two-pronged standard used to review claims of ineffective assistance of trial counsel, as set forth in Strickland, is discussed above. Petitioner will not be entitled to habeas corpus relief on any claim of ineffective assistance of trial counsel unless he demonstrates that the OCCA's post-conviction adjudication of those claims was an unreasonable application of Strickland. 28 U.S.C. § 2254(d); Pinholster, 131 S. Ct. at 1403.

Petitioner also claims that appellate counsel provided ineffective assistance in failing to raise his post-conviction claims on direct appeal. As cited above, the OCCA affirmed the district court's denial of post-conviction relief, concluding that Petitioner had failed to establish that appellate counsel's performance was deficient or that the result of his appeal was not reliable and fair. However, the OCCA, citing Strickland, 266 U.S. at 687, also stated that "[t]he fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance, or to preclude enforcement of a procedural default." See Dkt. # 8, Ex. 6. The OCCA's statement regarding appellate counsel's failure "to recognize or raise a claim,

17

regardless of merit" deviates from the controlling federal standard. Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law); see also Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). Because the OCCA's analysis of Petitioner's allegations of ineffective assistance of appellate counsel deviated from the controlling federal standard, it is not entitled to deference on habeas review. Cargle, 317 F.3d at 1205; see also Malicoat, 426 F.3d at 1248. Therefore, the Court will analyze Petitioner's claims of ineffective assistance of appellate counsel de novo.

When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance."

18

Cargle, 317 F.3d at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93).

The Court shall use the applicable standards to analyze Petitioner's claims of ineffective assistance of trial and appellate counsel raised throughout grounds 5-21.

### a. Issues related to handwriting sample (grounds 5-9)

In grounds 5 through 9, Petitioner raises issues related to the State's procurement and use of a handwriting sample from Petitioner. See Dkt. # 1. Petitioner argues that appellate counsel provided ineffective assistance in failing to raise these claims on direct appeal. At trial, one of the State's witnesses, Joy Schanke, testified that she received a letter from a "Daryl Hess," a prisoner at the Tulsa County Jail, asking her to provide an alibi for him for the crimes charged in Case No. CF-2007-2643. See Dkt. # 10-3, Tr. Trans. Vol. III at 398-99. Ms. Schanke testified that she did not know and had never met Daryl Hess. Id. at 398. To confirm that the letter was written by Petitioner, the prosecution obtained a warrant for a handwriting sample from Petitioner. After Petitioner refused to comply with the warrant, the State filed a "motion to compel production of a handwriting sample," and eventually obtained a handwriting sample from Petitioner. Petitioner now complains that the handwriting sample was obtained without notice to him or his attorney and that his attorney provided ineffective assistance in failing to file a motion to suppress Detective St. Clair's testimony concerning Petitioner's refusal to comply with the warrant, for failing to object to the introduction of the handwriting sample at trial, and for failing to "hold the prosecution to any adversarial standard." See Dkt. # 1, grounds 5 through 9.

Petitioner has failed to identify or demonstrate the existence of a basis for suppression of the handwriting sample obtained from him while he was in custody. The Supreme Court of the United States has held that the taking of a handwriting exemplar in the absence of counsel does not violate either Fifth or Sixth Amendment rights. Gilbert v. California, 388 U.S. 263, 266-67 (1951). The ruling was based on the conclusions that a handwriting exemplar, in contrast to the content of a writing, is an identifying physical characteristic outside constitutional protection and that even if a defendant is unrepresented by counsel when a handwriting exemplar is taken, that fact can be brought out and corrected during trial through the adversary process. Id.

In this case, the handwriting sample was relevant to prove that Petitioner had written the letter to Schanke in an effort to produce alibis for his whereabouts at the times of the Cowan and Saizow robberies. In addition, Petitioner testified in his own defense. He admitted he wrote the letter and explained why he wrote to Ms. Schanke requesting her to provide an alibi for him. See Dkt. # 10-3, Tr. Trans. Vol. III at 460. Because he had the opportunity to explain why he wrote the letter to Schanke, he has failed to demonstrate a clearly established due process violation. Furthermore, even if Petitioner's lack of notice of either the search warrant or the motion to compel justified suppression of the handwriting sample obtained while he was in custody at the Tulsa County Jail, he cannot demonstrate that he suffered prejudice as the remaining evidence against Petitioner was overwhelming. Strickland, 466 U.S. at 696. As Petitioner has failed to identify a sound basis for suppression of the handwriting sample, he has failed to demonstrate that the OCCA's adjudication of his post-conviction claims of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, Strickland. As to Petitioner's claim of ineffective assistance of appellate counsel, because the omitted issues arising from the State's procurement and use of the

handwriting sample as identified by Petitioner in his post-conviction application and in grounds 5-9 of his habeas petition are meritless, appellate counsel did not provide ineffective assistance in failing to raise the claims on direct appeal. Cargle, 317 F.3d at 1202; see also Parker, 148 F.3d at 1221.

### b.  Rulings or lack of rulings by trial judge (grounds 10, 12-17)

Petitioner also claims that appellate counsel provided ineffective assistance in failing to challenge several rulings by the trial judge. Specifically, he claims that the trial judge erred in granting the prosecution's notice of intent to try jointly the charges based on the Cowan and Saizow robberies (ground 10); in denying his request for a mistrial based on the presence and conduct of sheriff's deputies throughout his trial (ground 12); in admitting the testimony of Sgt. Witt and Det. Forbrich concerning his alleged confessions (ground 15); and in admitting physical evidence of the robberies, including the victims' credit and identity cards, a photo of Saizow's cell phone, and a shotgun shell, all recovered in Solomon's apartment or on the person of co-defendant Sullivan (ground 16).  Petitioner also complains that the trial judge failed to rule on all of his pro se motions (grounds 13, 14, and 17).

 Upon de novo review, Petitioner's claims of ineffective assistance of appellate counsel fail because Petitioner cannot satisfy the prejudice prong of the Strickland standard for any of these claims.  As to the claim based on the joinder of the two separate robbery charges, Petitioner cannot demonstrate he was prejudiced by the trial judge's refusal to sever the charges because he was acquitted of the Cowan robbery and sentenced to the minimum sentence of twenty (20) years for the Saizow robbery.  In support of his claim concerning the admission of physical evidence recovered from Solomon's apartment, Petitioner argues that because he "was on the grounds legally" and Solomon "consented to the search [of her apartment] under duress," the evidence recovered from

the apartment should have been suppressed. See Dkt. # 1. The record reflects that police officers arrived at Solomon's apartment to execute a warrant for the arrest of Petitioner and Sullivan. See Dkt. # 10-2, Tr. Trans. Vol. II at 281-82,  Solomon gave authorities permission to search her apartment. Id. at 289. Petitioner fails to set forth an argument justifying suppression of the evidence. For that reason, he cannot demonstrate that he suffered prejudice as a result of appellate counsel's failure to raise the claim. As to Petitioner's claim that the presence of sheriff's deputies throughout his trial infringed on the presumption of innocence, the trial judge denied trial counsel's repeated motions for mistrial and explained on the record that the deputies' presence was discreet and resulted from Petitioner's own actions, including the fact that Petitioner had threatened his counsel with bodily harm. See Dkt. # 10-2, Tr. Trans. Vol. II at 210-11; Dkt. # 10-3, Tr. Trans. Vol. III at 490-92.  The Supreme Court has stated explicitly that "the presence of guards in a courtroom during trial is not the sort of inherently prejudicial practice that should be permitted only where justified by an essential state interest." Holbrook v. Flynn, 475 U.S. 560, 568 (1986). Rather, "[w]henever a courtroom arrangement is challenged as inherently prejudicial . . . the question [is] . . . whether an unacceptable risk [of prejudice] is presented." Id. at 570. A risk of prejudice to the defendant can be justified by the need for courtroom security. Id. at 563. In this case, it is clear from the trial court record that the additional deputies were required to maintain the security of the courtroom in response to Petitioner's conduct and a threat made to defense counsel. The Court finds that the existence of additional deputies at Petitioner's trial was not inherently prejudicial, and Petitioner makes no showing of actual prejudice as a result of the deputies' presence. Therefore, Petitioner cannot demonstrate that the result of his appeal would have been different had appellate counsel challenged the denial of a mistrial on direct appeal.

As to Petitioner's claims based on his belief that the trial judge failed to rule on his <u>pro</u> <u>se</u> motions, including his motions to withdraw counsel based on a conflict of interest, to suppress his admissions to Sgt. Witt and Det. Forbrich, and to suppress the evidence recovered at Solomon's apartment, the claims fail. The record reflects that on the first morning of trial, September 22, 2008, the trial judge explained to Petitioner that his motion to withdraw counsel had been scheduled to be heard previously, on September 3, 2008, but that Petitioner had refused to appear. <u>See</u> Dkt. # 10-1, Tr. Trans. Vol. I at 5, 9.  The trial judge further explained that she was not going to allow Petitioner to fire his attorney and proceed <u>pro</u> <u>se</u> because she had concerns about Petitioner's ability to represent himself <u>pro</u> <u>se</u> and because the court's rules did not allow attorneys to withdraw within 10 days of a court proceeding. <u>Id.</u> at 9.  Because the record reflects that the trial judge did in fact rule on Petitioner's motion to withdraw counsel, his claim to the contrary lacks merit. Similarly, the trial judge conducted a <u>Jackson v. Denno</u>[7] hearing on the admissibility of Petitioner's statements to the law enforcement officers. <u>See</u> Dkt. # 10-2, Tr. Trans. Vol. II at 213-30.  After hearing the testimony, the trial judge ruled that Petitioner's statements were admissible because they were freely and voluntarily given.  <u>Id.</u> at 230. Petitioner's claim that the trial judge erred in admitting the testimony is baseless. Lastly, even if the trial judge failed to enter a ruling on Petitioner's <u>pro</u> <u>se</u> motion to suppress the physical evidence recovered from Solomon's apartment and vehicle, Petitioner had no sound legal basis supporting his request for suppression of the evidence. His motion would have been denied.

---

[7] <u>Jackson v. Denno</u>, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

In sum, because the omitted issues based on various rulings or lack of rulings by the trial judge are meritless, neither trial nor appellate counsel provided ineffective assistance with regard to the claims. Cargle, 317 F.3d at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).

### c.  Ineffective assistance of trial counsel (grounds 11, 18-20)

Petitioner's claims of ineffective assistance of trial counsel, as raised in grounds 11, 18, 19, and 20, fail under the doubly differential standards of 28 U.S.C. § 2254(d) and Strickland. Pinholster, 131 S. Ct. at 1403.  In ground 11, Petitioner complains that trial counsel failed to investigate, identify, and utilize evidence that would have led to Petitioner's acquittal.  See Dkt. # 1.  He states that he and trial counsel "had yelling matches" and that counsel "failed to establish a trust relationship with Petitioner." Id.  Petitioner further alleges that counsel had told him at their first meeting that "he was a freind [sic] of alleged victim Shelby Cowan."[8]  Significantly, Petitioner was acquitted of the Cowan robbery.  In addition, although Petitioner offers a lengthy description of potential evidence and witnesses supportive of his claim of innocence, he fails to acknowledge the strength of the State's evidence against him. Defense counsel presented Petitioner's defense of mistaken identity through cross-examination of witnesses.  In light of the testimonial and physical evidence presented at trial, it was not an objectively unreasonable strategic decision by trial counsel to forego presenting Petitioner's friends and family members as alibi witnesses.  Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially

---

[8]Shelby Cowan, the victim of the May 5, 2007, robbery, testified during cross-examination by defense counsel that he had worked for years as a bailiff for several judges at the Tulsa County courthouse.  See Dkt. # 10-2, Tr. Trans. Vol. II at 265-66.  Cowan testified that he remembered defense counsel.  Id. at 265.

a matter of strategy."); <u>Boyd v. Ward</u>, 179 F.3d 904, 915 (10th Cir. 1999) (describing decisions regarding impeaching witnesses and introducing evidence as matters of "trial strategy and tactics"); <u>see also Strickland</u>, 466 U.S. at 699.

In ground 18, Petitioner claims that trial counsel provided ineffective assistance in failing to object to Saizow's identification of him made from the photo line-up, at preliminary hearing, and at trial.  <u>See</u> Dkt. # 1.  Petitioner explains that trial counsel failed to investigate and present evidence demonstrating that Saizow's identifications were tainted by descriptions of the suspects as reported on the news.  Under the facts of this case and the law applicable to identifications,[9] trial counsel did not perform deficiently in failing to challenge Saizow's identifications of Petitioner as the man who robbed him at gun point.

In grounds 19 and 20, Petitioner claims that trial counsel provided ineffective assistance in failing to request jury instructions regarding eyewitness identification and impeachment with regard to the victim Saizow.  Petitioner's jury did in fact receive instructions regarding eyewitness identifications, <u>see</u> Dkt. # 8, Ex. 10 (Instruction No. 18) and impeachment evidence based on

_____

[9]As the Supreme Court stated in <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977), "the admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." <u>Id.</u> at 106. A reliability determination requires an inquiry into the totality-of-the-circumstances. <u>Neil v. Biggers</u>, 409 U.S. 188, 196 (1972). "The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation." <u>Manson</u>, 432 U.S. at 114; <u>see also</u> <u>Biggers</u>, 409 U.S. at 199-200.  In this case, Saizow testified that during the course of the robbery, he got a "good look" at the robber's face, <u>see</u> Dkt. # 10-3, Tr. Trans. Vol. III at 337, he was within five feet of the robber, <u>id.</u> at 340, and he selected Petitioner's photo from the lineup shown to him by Detective St. Clair within a few days of the robbery, <u>id.</u> at 348, 417. Saizow testified at trial that Petitioner was the man who pointed a gun at him and took his wallet, <u>id.</u> at 349.

inconsistent prior statements by Saizow, see Dkt. # 8, Ex. 12 (Instruction No. 19). Thus, Petitioner's claims of ineffective assistance of trial counsel lack a basis in fact and are meritless.

Lastly, because Petitioner's claims of ineffective assistance of trial counsel claims lack merit, appellate counsel did not provide ineffective assistance in failing to raise the claims on direct appeal. Smith v. Workman, 550 F.3d 1258, 1268 (10th Cir. 2008) (stating that "[w]hile counsel should not omit plainly meritorious claims, counsel need not raise meritless issues").

### d.  Cumulative error (ground 21)

As ground 21, Petitioner alleges that the cumulative effect of all the errors raised in grounds 1 through 20 deprived him of a fair trial and that appellate counsel provided ineffective assistance in failing to raise a claim of cumulative error on direct appeal. A cumulative error inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis.  Therefore, Petitioner has failed to demonstrate that appellate counsel provided ineffective assistance of counsel in failing to raise a cumulative error claim on direct appeal.  Smith, 550 F.3d at 1268.

26

**D.  Procedural bar**

As discussed above, the claims raised in grounds 5-21 were first presented to the state courts in Petitioner's post-conviction proceeding. Petitioner did not raise the claims on direct appeal.  In resolving Petitioner's claims on post-conviction appeal, the OCCA cited to the state district court's order denying post-conviction relief based on a procedural default and found that "Petitioner has failed to establish entitlement to relief in any of his propositions of error." See Dkt. # 8, Ex. 6.  Other than the claims of ineffective assistance of trial and appellate counsel discussed above, the Court finds the remainder of the claims are procedurally barred.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).   "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority' of cases." Id. at 986 (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's grounds 5-7, 9, 10, 12-17, and 21 are procedurally barred from this Court's review. The state court's procedural bar applied to those claims was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state

court's holding." Maes, 46 F.3d at 985. Additionally, the procedural bar was an "adequate" state ground because the OCCA requires strict adherence to procedural rules and consistently dismisses appeals which do not comply with the rules. See Smith, 550 F.3d at 1267 (agreeing that OCCA's finding of waiver, under Okla. Stat. tit. 22, § 1086, was independent and adequate to preclude federal habeas review).

As a result, the Court finds that habeas corpus relief on those grounds shall be denied as procedurally barred unless Petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of the claims. Coleman, 501 U.S. at 750; Maes, 46 F.3d at 985. To demonstrate "cause," a petitioner is required to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. A petitioner is additionally required to establish prejudice, which requires showing "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The alternative is proof of a "fundamental miscarriage of justice," which requires a petitioner to demonstrate that he is "actually innocent" of the crime for which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner argues ineffective assistance of appellate counsel as "cause" for his failure to raise his defaulted claims on direct appeal. See Dkt. ## 1, 16. The Court addressed Petitioner's ineffective assistance of appellate counsel claims in Part C(2), above, and found the claims to be without merit. As a result, Petitioner's ineffective assistance of appellate counsel claims cannot serve as "cause" to overcome the procedural bar applicable to the defaulted claims listed above.

Petitioner may also overcome the procedural bar applicable to his defaulted claims under the fundamental miscarriage of justice exception. That exception is applicable only when a petitioner asserts a claim of actual innocence. Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . [or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Petitioner does claim that he is actually innocent of the crimes for which he was convicted based on his defense of mistaken identity. However, he fails to provide new evidence demonstrating that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Therefore, Petitioner has failed to demonstrate that he falls within the fundamental miscarriage of justice exception to the doctrine of procedural bar.

Accordingly, because Petitioner has not shown "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's defaulted claims. Coleman, 501 U.S. at 724. He is not entitled to habeas corpus relief on those claims.

E.      **Certificate of appealability**

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The Clerk of Court shall **substitute** Anita Trammell, Warden, in place of David C. Miller, Warden, as party respondent.

2.      The petition for a writ of habeas corpus (Dkt. #1) is **denied**.

3.      A separate judgment shall be entered in this matter.

4.      A certificate of appealability is **denied**.


**DATED** this 24th day of June, 2013.


CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE